# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | | |
|---|---|---|
| VICTOR RAY REGISTER, JR., | ) | 1:03-CV-06924 LJO JMD (HC) |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| | ) | |
| SCOTT KERNAN, Warden, | ) | [Doc #1] |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

### PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kings, Case No. CM0581.

On November 13, 2000, following a jury trial, Petitioner was found guilty of two counts of aggravated sexual assault of a child arising from a forcible rape and forcible digital penetration.

1  Cal. Penal Code. §§ 269(a)(1) and (a)(5).  Answer, Ex. A.[1]  On December 13, 2000, the court

2  sentenced him to an aggregate term of thirty years to life in state prison.  Id.

3       On April 26, 2001, Petitioner filed an appeal with the California Court of Appeal, Fifth

4  Appellate District ("Fifth DCA"), case No. F037252.  Ex. B.  The state filed a responsive brief on

5  September 27, 2001 (Ex. C), and Petitioner filed a reply brief on November 28, 2001 (Ex. D).  On

6  October 28, 2002, the Fifth DCA affirmed the judgment of the trial court with the exception of a

7  visitation prohibition, of which the Fifth DCA directed modification.

8       On December 2, 2002, Petitioner filed a petition for review in the California Supreme Court,

9  petition No. S111736.  Ex. F.  On January 15, 2003, the California Supreme Court denied the

10  petition for review.  Ex. G.

11       On December 24, 2003, Petitioner filed the instant petition, alleging two grounds for relief:

12  (1) CALJIC No. 2.50.01 includes an irrational impermissible inference in violation of Due Process;

13  and (2) CALJIC No. 2.50.01 unconstitutionally undermines the presumption of innocence and

14  requirement of proof beyond a reasonable doubt.

15       Respondent filed its Answer to the petition on June 17, 2004.  On July 19, 2004, Petitioner

16  filed a Traverse to Petitioner's Answer.

17  **FACTUAL BACKGROUND**

18  The Court adopts the facts as recited by the Fifth DCA in its opinion dated October 28, 2002:

19       Defendant and M (hereafter Mother) were friends for several years.
20  Defendant offered to take Mother's seven-year-old daughter, Y, to the movies; Y would then spend the night at defendant's house.  Defendant stated that he would also be taking C, another young girl, with them to be with Y.  Mother agreed
21  because she trusted defendant.
     Defendant picked up Y.  They went to C's home, but she could not attend the
22  movies because she was being disciplined. Defendant and Y went to the movies and then returned to defendant's house.  They watched television in defendant's room
23  and went to sleep.  Defendant hugged Y during the night and she felt uncomfortable about it.
24       The next morning defendant and Y got up and got dressed.  Defendant drove
25  Y to the park in his van.  While Y played, defendant sat on a bench and watched her. There was no one else at the park at this time.  Y went to the bathroom and then got
26  in the van with defendant.  Defendant had Y sit on his lap while driving around the parking lot.

27

28  [1]  Unless otherwise noted, all subsequent statutory references are to the California Penal Code, and all subsequent Exhibit references are to the exhibits attached to Respondent's Answer..

2

After defendant stopped, he instructed Y to go to the back of the van. Defendant then pulled down Y's sweatpants and panties. Defendant laid Y down on the seat of the van. Y was scared. Defendant put his penis in Y's vagina. Y cried and twice told defendant to stop. Defendant did not stop. During the act of intercourse, defendant told Y to "shut up," speaking "in a mean way." Y was scared. After defendant removed his penis from Y, he put his finger inside of her. She told him to stop, but he kept doing it. Y told defendant twice that she wanted to go home; defendant told her no. Y was bleeding. Defendant removed his finger from Y when he saw someone ride by the van on a bike. Defendant put Y.'s sweatpants back on her. Defendant told Y he had "popped her cherry." He also told Y that if she told Mother what happened defendant would hurt Mother.

Defendant took Y home at approximately 10 a.m. When Y arrived home, she walked straight in the house and sat on the couch. Mother thought Y was sick because she was not acting in her usual manner. Mother asked Y if anything was wrong; she said no. About 45 minutes after arriving home, Y went to the bathroom. Y called out to Mother to bring her some water because it burned when she was urinating. Mother brought her some water and handed it to her through the door. Y left the bathroom and went into Mother's room. Y was crying and said it hurt. Mother told Y to take down her pants and underwear so she could make sure she was not hurt. When Y pulled down her underwear it was covered in blood. Mother asked Y what had happened and she said that defendant "popped her cherry." Mother took Y to the hospital.

Y was examined at the hospital. She weighed 49.5 pounds and was 45 1/4 inches tall. She had a bruise on her spine, wrist, arm, and thigh. She had significant redness in the vaginal area, more than is usually seen with a sexual assault victim. She had several tears (one that was very deep), abrasions, swelling, and redness throughout her genital area. She had a divot in the genital area consistent with having been jabbed by a fingernail. Y's condition was not normal for a seven-year-old child. The tearing to Y's hymen was consistent with forced penetration with a hard object. It was the opinion of the examiner that Y Suffered blunt force penetrating trauma consistent with Y's account of what happened to her. A small amount of semen was detected in Y's panties, but it was not enough to test for DNA.

Defendant was arrested and his van was searched. Officers found three bloodstains on the back seat of his van. The blood was Y's blood. Defendant agreed to talk to officers. He said that he had been with Y but he did not know anything about a sexual assault. Defendant explained that Y's blood was present in his van because Y had split her lip a couple of days earlier when she was in the van. Defendant is five feet 10 inches tall and weighed 132 pounds when he was arrested.

The prosecution represented evidence of four other sexual molestations perpetrated by defendant. Twelve-year-old R testified that when she was nine years old she went with W and W's boyfriend, defendant, to the movies. At some point during the night defendant tried to kiss her. Later defendant told R he was sorry.

W's sister, A, testified that on one occasion when W and defendant were living together and A was 10 or 11 years old she spent the night with defendant and W. They all slept together in the same bed. A awoke to find defendant rubbing her leg on the inner thigh and kissing her on the cheek. A was afraid and got up and slept on the floor.

Fourteen-year-old C testified that when she was six years old she was living in a motel. Defendant lived there too. Defendant played with C and her sisters. On one occasion defendant lifted up her dress and put his hand in her underwear. The police investigated, and defendant denied touching C. Defendant was 16 at the time. Charges were dropped against defendant for this incident.

L was staying at defendant's house one evening when she was four years old. She was watching television when she fell asleep. Defendant picked her up and took her to his room. He removed her panties and put his hand on her genital area.

3

ed

Defendant then washed off L's panties, gave them back to her, and took her back into the house.  L was seven when she testified at trial.

**Defense**

Defendant testified that he picked up Y and took her to the movies.  They slept in the same bed that night and he took her home the next morning around 8 a.m.  He did not have any sexual contact with her.  He explained that Y had cut her foot on an earlier outing to the park and that is why her blood was on the seat of his van.  Defendant denied molesting any of the other girls who testified at trial.  Defendant's mother testified that defendant took Y home between 8 and 9 a.m.

## DISCUSSION

I. **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. **Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C . § 2254(a).

The instant petition is reviewed under the provisions of the AEDPA.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, a petition for habeas corpus will not be granted unless

1  the adjudication in question "resulted in a decision that was contrary to, or involved an unreasonable

2  application of, clearly established Federal law, as determined by the Supreme Court of the United

3  States" or "resulted in a decision that was based on an unreasonable determination of the facts in

4  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

5  538 U.S. at 70-71; Williams, 529 U.S. at 413.

6       As a threshold matter, this Court must "first decide what constitutes 'clearly established

7  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

8  quoting 28 U.S.C. § 2254(d)(1).  In ascertaining "clearly established Federal law," the Court looks

9  to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant

10  state-court decision." Id., quoting Williams, 592 U.S. at 412.  "In other words, 'clearly established

11  Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the

12  Supreme Court at the time the state court renders its decision." Id.

13       Finally, this Court must consider whether the state court's decision was "contrary to, or

14  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

15  quoting 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

16  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on

17  a question of law or if the state court decides a case differently than [the] Court has on a set of

18  materially indistinguishable facts." Williams, 529 U.S. at 413; see also   Lockyer, 538 U.S. at 72.

19  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

20  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

21  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

22       This Court may not issue the writ simply because in its independent judgment the state court

23  decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that

24  application must also be unreasonable." Id. at 411.  A federal habeas court making the

25  "unreasonable application" inquiry should ask whether the state court's application of clearly

26  established federal law was 'objectively unreasonable." Id. at 409.

27       Petitioner has the burden of establishing that the decision of the state court is contrary to or

28  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

1  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

2  ninth circuit precedent remains relevant persuasive authority in determining whether a state court

3  decision is objectively unreasonable.  See  Duhaime v. DuCharme, 200 F.3d 597, 600-01 (9th cir.

4  1999).

5          AEDPA requires that this court give considerable deference to state court decisions.  The

6  state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  Moreover, we are

7  bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.

8  2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

9  III.  **Review of Petitioner's Claims**

10          A.      **Claim One:    Jury Instruction Created an Irrational Permissive Inference**

11                  i.      **Factual Background**

12          Pursuant to California Evidence Code section 1108, the trial court allowed the prosecution

13  to present four witnesses to describe prior incidents of lewd and lascivious acts perpetrated on them

14  by Petitioner.  The court found that these incidents were very significant on the question of

15  defendant's sexual interest in pre-adolescent female children.

16          At the close of trial, the jury was instructed pursuant to CALJIC No. 2.50.01 (1999

17  revision) on how to view this evidence.  The instruction reads:

18          Evidence has been introduced for the purpose of showing that the defendant
            engaged in a sexual offense on one or more occasions other than that charged in the
19          case.
            'Sexual offense' means a crime under the laws of a state or of the United
20          States that involves any...conduct made criminal by Penal Code Section 288a [sic]
            (child molestation).  The elements of this crime are set forth elsewhere in these
21          instructions.
            If you find that the defendant committed a prior sexual offense, you may, but
22          are not required to, infer that the defendant had a disposition to commit sexual
            offenses.  If you find that the defendant had this disposition, you may, but are not
23          required to, infer that he was likely to commit and did commit the crime or crimes of
            which he is accused.
24          However, if you find by a preponderance of the evidence that the defendant
            committed prior sexual offenses, that is not sufficient by itself to prove beyond a
25          reasonable doubt that he committed the charged crimes.  The weight and significance
            of the evidence, if any, are for you to decide.
26          You must not consider this evidence for any other purpose.

27          Petitioner claims that CALJIC No. 2.50.01 violates his Due Process rights in that it contains

28  two irrational permissive inferences:  (1) it permits the jury to infer from evidence of prior sexual

offenses that Petitioner has a disposition to commit sexual crimes; and (2) it permits the jury to

further infer based on the first inference that Petitioner is likely to commit and did commit the

charged crimes.

### ii.    Clearly Settled Supreme Court Law

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

the ailing instruction by itself so infected the entire trial that the resulting conviction violates Due

Process. Estelle v. McGuire, 502 U.S. 62, 72 (1991) .  Additionally, the challenged instruction(s)

may not be judged in artificial isolation, but must be considered in the context of the instructions as

a whole and the trial record. Id.  The court must evaluate jury instructions in the context of the

overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456

U.S. 152, 169 (1982), *citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  Furthermore, even if

it is determined that the instruction violated the petitioner's right to Due Process, a petitioner can

only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and

thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

(whether the error had a substantial and injurious effect or influence in determining the jury's

verdict.); see Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).  The burden of demonstrating

that an erroneous instruction was so prejudicial that it will support a collateral attack on the

constitutional validity of a state court's judgment is even greater than the showing required to

establish plain error on direct appeal.  Id.

The use of presumptions is permitted in criminal trials. Ulster County v. Allen, 442 U.S.

140, 156 (1979) (presumptions are "a staple of our adversary system of factfinding.").  The

"ultimate test" of constitutional validity is whether or not the presumption "undermine[s] the

factfinder's responsibility at trial...to find the ultimate facts beyond a reasonable doubt." Id., *citing*

In re Winship, 397 U.S. 358, 364; Mullaney v. Wilbur, 421 U.S. at 702-03, n. 31.

A permissive inference – such as is presented here – allows, but does not require, the trier of

fact to infer an ultimate fact from proof by the prosecutor of other facts. Ulster County, 442 U.S. at

157.  It does not shift the burden of proof, and leaves the trier of fact free to credit or reject the

inference.  Therefore, it does not disrupt Due Process unless, under the facts of the case, "there is no

ed

1   rational way the trier could make the connection permitted by the inference." Id.

2        Permissive inferences instructions are constitutional "so long as it can be said 'with

3   substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on

4   which it is made to depend.'" Schwendeman v. Wallenstein, 971 F.2d 313, 316 (9th Cir. 1992),

5   quoting United States v. Rubio-Villareal, 967 F.2d 294, 296 (9th Cir. 1992) (en banc), citing Ulster

6   County, 442 U.S. at 166 n. 28.  In other words, a permissive inference violates Due Process "only if

7   the suggested conclusion is not one that reason and common sense justify in light of the proven facts

8   before the jury." Francis v. Franklin, 471 U.S. 307, 314-15, citing Ulster County, 442 U.S. at 157-

9   63.

10              **iii.      Review by the State Courts**

11       This claim was first presented on direct appeal to the Fifth DCA, which denied it on October

12  23, 2002 in a reasoned opinion. See Ex. E.  The claim was then presented to the California

13  Supreme Court in a petition for review, which summarily denied the claim on January 16, 2003..

14  See Ex. G.  The California Supreme Court, by its "silent order" denying review of the Fifth DCA's

15  decision, is presumed to have denied the claims presented for the same reasons stated in the opinion

16  of the Fifth DCA.  Y1st v. Nunnemaker, 501 U.S. 797, 803 (1991).

17       In rejecting Petitioner's claim, the Fifth DCA found the instructions were correct under

18  California law.  Ex. E at 13, citing People v. Van Winkle, 75 Cal.App.4th 133 (1999).  The Fifth

19  DCA noted that the Van Winkle court had confronted an identical challenge to CALJIC No.

20  2.50.01, and had found that the inferences permitted by the instructions were inferences a trier of

21  fact could rationally make.  The Van Winkle court cited to the Supreme Court's opinion in Ulster

22  County in support of its finding that because there was a rational way the trier of fact could make

23  the connection permitted by the inferences, the instruction meets the requirements of Due Process.

24  Van Winkle, 75 Cal.App.4th at 143-144, citing Ulster County Court v. Allen, 442 U.S. 140, 157.

25              **iv.      Analysis of Petitioner's Claim**

26       The decision of the Fifth DCA is neither contrary to, nor an unreasonable application of

27  relevant Supreme Court precedent.  As noted above, the use of presumptions is sanctioned in

28  criminal trials.  Ulster County v. Allen, 442 U.S. 140, 156 (1979).  In particular, an instruction on a

ed

permissive presumption violates Due Process only where, under the facts of the case, "there is no

rational way the trier could make the connection permitted by the inference." Id. Here, the Fifth

DCA found that a trier of fact could rationally have made the connection between Petitioner's

history of sexual abuse of young girls and the inferred facts of his disposition to commit such

offenses and his having committed the charged offense.

Petitioner argues that the inference is irrational because there is not "'substantial assurance'

that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to

depend.'" Schwendeman, 971 F.2d 313, 316 (9th Cir. 1992), *quoting* United States v. Rubio-

Villareal, 967 F.2d 294, 296 (9th Cir. 1992) (en banc) (*citing* Ulster County, 442 U.S. at 166 n. 28).

With respect to the permissive inference that Petitioner had a propensity to commit sexual

offenses, there is substantial assurance that a finding of propensity to commit sexual offenses against

children flows more likely than not from proof of past sexual offenses against children.  Indeed, the

existence of such a propensity was at least in part the basis for the enactment of both California

Evidence Code section 1108 and its federal analog, Federal Rules of Evidence Rules 413-415.  See

Historical and Statutory notes to Cal. Evid. Code § 1108.

With respect to the second permissive inference – that Petitioner was likely to commit and

did commit the sexual offense in question – the instruction here is distinct from the instruction found

unconstitutional in Schwendeman.  In Schwendeman, the challenged instruction permitted the jury

to find the ultimate fact (reckless driving) *solely* on proof of the proved fact (excessive speed).  Were

the jury in Petitioner's case instructed that it could base a finding of guilt solely on proof of past

offenses, such an instruction would not be proper.  However, the instruction given to the jurors in

Petitioner's case expressly states the inference "is *not sufficient by itself* to prove beyond a

reasonable doubt that he committed the charged crimes."  CALJIC No. 2.50.01 (1999 revision)

(emphasis added).  The instruction further states that it is solely the province of the jury to determine

"[t]he weight and significance of the evidence, if any."  Id.  Thus by its terms the instruction did not

"undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find

the ultimate facts beyond a reasonable doubt."  Ulster County, 442 U.S. at 156, *citing* In re

Winship, 397 U.S. 358, 364; see also U.S. v. Warren, 25 F.3d 890, 899 (9th Cir. 1994) (permissive

inference instructions less likely to intrude upon the jury's exclusive fact finding role where the instructions condition and qualify the inference instruction).

Even if there was error of constitutional magnitude in the challenged instruction, any such error was harmless. There was "ample evidence from which the jury could have found" Petitioner to have committed the charged offenses. Schwendeman, 971 F.2d 316. In addition to the evidence of prior sexual offenses, there was the testimony of Y and that of Y's mother. Ex. E at 3. There was also substantial physical evidence. Semen was detected in Y's panties. Id. Y's blood was found on the backseat of Petitioner's van, corroborating her testimony that the rape and forced digital penetration occurred in that area. Id. at 4. Y had bruises on her spine, wrist, arm and thigh, and significant redness in her vaginal area; she had several tears, abrasions, swelling and redness throughout her genital area, and a divot in her genital area consistent with having been jabbed with a fingernail. Additionally her hymen was torn, consistent with forced penetration. Id. at 3. A sexual assault examiner opined that Y's injuries were consistent with her account of forcible rape and digital penetration. Id. Other evidence includes Petitioner's admission that he had shared a bed with Y the night prior, and his inconsistent explanations as to how Y's blood got into the back seat of his van. Id. at 4-5.

As in Schwendeman, there was ample evidence of Petitioner's guilt. Unlike in Schwendeman, the jury in this case was not told it could base a finding of guilt solely on the challenged inference. Under the circumstances, any error in CALJIC No. 2.50.01 did not have substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The determination of the Fifth DCA is not contrary to, nor an unreasonable application of Supreme Court precedent. Moreover, even if the challenged instruction were constitutionally deficient, any error was harmless in light of the instruction's cautionary language and the significant evidence of Petitioner's guilt. Petitioner's claim should therefore be denied.


**B.      Claim Two:   Instructions Permitted Conviction Without Proof Beyond a
                    Reasonable Doubt**

### i.       Factual Background

In addition to CALJIC No. 2.50.01, the jury was instructed pursuant to CALJIC No. 2.50.1 (6th ed. 1996) on the preponderance of the evidence as follows:

> Within the meaning of the preceding instruction [CALJIC No. 2.50.01], the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses other than those for which he is on trial.
> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offenses.

CALJIC No. 2.50.2, defining preponderance of the evidence, was also given:

> 'Preponderance of the evidence' means evidence that has more convincing force than that opposed to it.  If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who has the burden of proving it.
> You should consider all of the evidence bearing upon every issue regardless of who produced it.

In his second claim, Petitioner asserts  the combination of CALJIC Nos. 2.50.01, 2.50.1 and 2.50.2 worked to undermine the presumption of innocence and to permit his conviction on proof amounting to less than that necessary to meet the "reasonable doubt" standard.

### ii.       Clearly Settled Supreme Court Law

The Due Process clause of the Fourteenth Amendment requires the prosecution to prove every element charged in a criminal case beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 364 (1970).  If the jury is not properly instructed that a defendant is presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been deprived of Due Process.  See Taylor v. Kentucky, 436 U.S. 478, 485-486 (1978).  A jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden...is plainly inconsistent with the constitutionally rooted presumption of innocence."  Cool v. United States, 409 U.S. 100, 104 (1972).

### iii.       Review by the State Courts

Petitioner first brought this claim of error before the Fifth DCA.  Petitioner asserted that, even if the permissive inference of CALJIC 2.50.01 is constitutional, it is nonetheless infirm because it is an inference of guilt rather than a factual inference, and therefore diminishes the presumption of

1    innocence. Petitioner argued that the instruction tells the jury in essence that if defendant has been

2    found to have committed sexual offenses in the past, the presumption of innocence need not apply.

3    "The jury was permitted to find prior allegations of prior sexual offenses to be true by a

4    preponderance of the evidence, and to infer therefrom a disposition to commit such offenses, and to

5    further infer from such disposition that appellant committed the charged offenses. Thus the jury

6    could have found appellant guilty under a standard that was less than beyond a reasonable doubt."

7    Petition at 14.

8           The Fifth DCA noted that the same argument had been rejected in earlier California cases.

9    Ex. E at 14, *citing* People v. Van Winkle, 75 Cal.App.4th at 147-148; People v. O'Neal, 78

10   Cal.App.4th 1065 (2000). It further noted that the California Supreme Court had voiced approval

11   of the exact language in the 1999 revision to CALJIC No. 2.50.01. Id. at 15, *citing* Falsetta, 21

12   Cal.4th 903, 924 (1999). It finally pointed to other appellate court decisions which found that the

13   combination of CALJIC Nos. 2.50.01, 2.50.01 and 2.50.02 (prior acts of domestic violence) do not

14   deprive a defendant of his right to Due Process and do not result in a conviction by a standard less

15   than beyond a reasonable doubt. Id., *citing* People v. Brown, 77 Cal.App.4th 1324, 1355; People v.

16   Hill, 86 Cal.App.4th 273, 279 (2001).

17                          **iv.    Analysis**

18          This court agrees with the Fifth DCA's finding that – viewed both in isolation and in the

19   context of the jury instructions and the record as a whole – the challenged instructions did not

20   impermissibly lower the prosecution's burden of proof beyond a reasonable doubt. As noted above,

21   the instruction on past offenses contained the following language:

22          However, if you find by a preponderance of the evidence that the defendant
            committed prior sexual offenses, *that is not sufficient by itself to prove beyond a*
23          *reasonable doubt that he committed the charged crimes*. The weight and
            significance of the evidence, if any, are for you to decide.
24

25   CALJIC 2.50.01, 1999 revision (emphasis added). Thus the challenged instruction itself states that

26   the jury may not determine guilt based solely on past offenses under a preponderance of the evidence

27   standard, but must instead determine guilt on proof beyond a reasonable doubt.

28   In addition, the jury was instructed generally on the presumption of innocence and the reasonable

1   doubt standard.  See RT 809; CT 346.  Taken as a whole, the instructions do not support

2   Petitioner's contention that the standard of proof was lowered in violation of Due Process.

3         The Fifth DCA's holding is not contrary to, nor an unreasonable application of Supreme

4   Court precedent.  Accordingly, Petitioner's claims should be denied.

5                              **RECOMMENDATION**

6         Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

7   corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

8         These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill,

9   United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

10  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District

11  of California.

12        Within thirty (30) days after being served with a copy, any party may file written objections

13  with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

14  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

15  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

16  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).

17  The parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

19  IT IS SO ORDERED.

20  **Dated:    October 31, 2007**                    **/s/ John M. Dixon**
                                              UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

ed